O'BURN et al., Plaintiffs,

v.

SHAPP et al., Defendants.

LUTZ et al., Plaintiffs,

v.

SHAPP et al., Defendants.

Civ. A. Nos. 75–619, 75–631.

United States District Court, E. D., Pennsylvania.

Feb. 19, 1976.

---

Allen E. Ertel, Williamsport, Pa., Gregory D. Keeney, Philadelphia, Pa., for plaintiffs.

Norman J. Watkins, Dept. of Justice, Harrisburg, Pa., for defendants.

Harold Goodman, Philadelphia, Pa., for intervening defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Presently pending before the Court are the defendants' and intervening defendants' motions to dismiss the original and amended complaints and the plaintiffs' response thereto presented at the oral argument on this matter.[1] Also pending before the Court is plaintiffs' request for the convening of a three-judge court. The above captioned actions are so-called "reverse discrimination" cases against the named state officials, filed by several non-minority[2] individuals, who are unsuccessful non-minority applicants for entry into the Pennsylvania State Police and present non-minority members of the State Police; the other plaintiff is an organization, the Conference of State Police Lodges of the Fraternal Order of Police. Plaintiffs allege that the defendants are discriminating against them by hiring and promoting members of minority groups through the use of racial quotas in violation of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania.[3] For the reasons hereinafter stated, we grant the motions to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter and we deny the request for the convening of a three-judge court.

The issues presented in the above-captioned actions arise out of a consent decree entered in a prior action in this Court captioned *Bolden et al. v. Pennsylvania State Police et al.*, C.A. 73–2604 (E.D.Pa. June 21, 1974). As noted by the Third Circuit in its prior decision in these actions, "the eligibility criteria currently in effect, and which were in effect when the individual plaintiffs . . . made employment application to the State Police were established as interim standards under . . ." the con-

---

1. Plaintiffs opposed the motions to dismiss at the oral argument on this matter, however, the plaintiffs have not provided this Court with a memorandum of law on the issue. Since we do not have a written response from the plaintiffs with the relevant citations to the legal authorities upon which they rely, for the purpose of disposing of the instant motions to dismiss, we considered their memorandum of law previously filed during the preliminary injunction proceedings.

2. "Minority" as defined by the *Bolden* consent decree means non-white and Spanish-surnamed individuals.

3. For a more detailed recitation of the factual background of the above-captioned actions, see this Court's opinion on plaintiffs' request for a preliminary injunction, *Oburn v. Shapp*, 393 F.Supp. 561 (E.D.Pa.1975) and the Court of Appeals affirmance of that opinion, *Oburn v. Shapp* and *Lutz v. Shapp*, 521 F.2d 142 (3d Cir. August 4, 1975).

sent decree entered in *Bolden*.[4] We specifically note that the Oburn plaintiffs have attached a copy of the *Bolden* consent decree to their complaint and thereby adopted it by reference as part of their pleading. With respect to the Lutz plaintiffs and their action, we take judicial notice of the prior *Bolden* action. *Burns v. Board of School Com'rs of City of Indianapolis, Inc.*, 302 F.Supp. 309 (S.D.Ind.1969), *aff'd per curiam*, 437 F.2d 1143 (7th Cir. 1971); *Commonwealth of Pennsylvania v. Brown*, 373 F.2d 771 (3d Cir. 1967).

The *Bolden* litigation is a suit brought by a Black member of the Pennsylvania State Police to remedy past racial discriminatory employment and promotion policies of the State Police. The parties in *Bolden* drafted a consent decree, subsequently entered as the judgment in the matter, which contained a specific hiring and promotion goal for minorities. Plaintiffs in their complaints allege that the hiring and promotion procedures mandated by the *Bolden* consent decree are the result of an interpretation of a state statute, 71 P.S. § 251.[5] In addition, the Oburn plaintiffs allege, in the alternative, that if the *Bolden* procedures are not an interpretation of 71 P.S. § 251, the effect of the consent decree is to have ruled the statute to be unconstitutional without the convening of a three-judge court in violation of 28 U.S.C. §§ 2281 and 2284. Plaintiffs allege that this Court has jurisdiction over the instant actions under 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Finally, plaintiffs in their prayer for relief seek: (1) a permanent injunction against the use of the hiring and promotion procedures mandated by *Bolden*, (2) a permanent injunction against the implementation of the *Bolden* consent decree and (3) a declaratory judgment that the *Bolden* hiring and promotion procedures are unconstitutional.

The procedural history of the *Bolden*, Oburn and Lutz cases is the following. The *Bolden* suit was adjudicated on June 21, 1974 in this Court in the Eastern District of Pennsylvania. The Oburn case, now pending before us, was filed originally on January 3, 1975 in the United States District Court for the Middle District of Pennsylvania and transferred to this Court pursuant to the defendants' motion on February 28, 1975. The Lutz case, also presently pending before us, was filed originally on March 4, 1975 in the United States District Court for the Middle District of Pennsylvania and transferred to this Court pursuant to the defendants' motion on March 4, 1975.

Defendants move to dismiss the complaints and the amended complaints on the grounds *inter alia* that (1) the instant suits constitute an improper collateral attack on the consent decree approved in *Bolden;* (2) one of the named plaintiffs, the Conference of State Police Lodges of the Fraternal Order of Police, lacks standing to attack the *Bolden* consent decree; and (3) the instant suits have failed to state a claim upon which relief can be granted. Intervening defendants move to dismiss the instant actions on the grounds *inter alia* that (1) the complaint and amended complaint fail to state a claim upon which relief can be granted because of the collateral nature of the proceedings and the failure of the plaintiffs to assert a legally cognizable interest

---

**4.** See note 3, supra.

**5.** Enlisted members of the Pennsylvania State Police are appointed by the Commissioner of the Pennsylvania State Police, see 71 P.S. § 65 (1975 Supp.), after having first satisfied certain criteria set forth in 71 P.S. § 1193 (1962) and the rules and regulations promulgated by the Commissioner set forth in 71 P.S. § 251 (1975 Supp.). More specifically, 71 P.S. § 251(a) provides:

(a) The Commissioner of Pennsylvania State Police shall be the head and executive officer of the Pennsylvania State Police. He shall provide, for the members of the State Police Force, suitable uniforms, arms, equipment, and, where it is deemed necessary, horses or motor vehicles, and make rules and regulations, subject to the approval of the Governor, prescribing qualifications prerequisite to, or retention of, membership in the force; for the enlistment, training, discipline, and conduct of the members of the force; for the selection and promotion of such members on the basis of merit; for the filing and hearing of charges against such members, and such other rules and regulations as are deemed necessary for the control and regulation of the State Police Force. . . .

susceptible to judicial protection; (2) the amended complaint alleging fraud fails to state a claim upon which relief can be granted; (3) plaintiff, the Conference of State Police Lodges of the Fraternal Order of Police, and plaintiffs, Clifford P. Artman, Stanley Komosinsky and Matthew Chabel, are barred from prosecuting the Oburn action by the principles of collateral estoppel; and (4) plaintiff, the Conference of State Police Lodges, lacks standing to sue because by prosecuting the Oburn action it has breached its duty of fair representation owed to all its members. At the oral argument plaintiffs opposed defendants' and intervening defendants' motions to dismiss, in essence, on the ground that plaintiffs are strangers to the *Bolden* litigation who have not had, as stated by their counsel, "a meaningful hearing".

■ While the plaintiffs have continually asserted during the various hearings in these matters that the instant suits are separate and apart from the *Bolden* litigation, their complaints and the relief requested therein reveal with clarity that the instant actions are a collateral attack upon the *Bolden* consent decree. Though plaintiffs originally asserted that the instant actions were grounded upon an attack on a state statute, any doubts as to the validity of this claim were removed with the filing of plaintiffs' amended complaint. The Oburn and Lutz plaintiffs have now amended their complaints by alleging that the *Bolden* consent decree should be set aside as a fraud upon the court. There are a limited number of situations where a collateral attack upon a final judgment is appropriate; accordingly, the issue before us is whether the pending cases come within that category.

In support of their position that a separate action is maintainable, plaintiffs have cited the Court to the case of *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). However, we find *Hansberry* to be inapposite to the cases before us. *Hansberry* stands for the proposition that a stranger to a prior suit, who lacks any opportunity to timely contest the validity of the final judgment rendered in that prior suit, may not be bound by the prior judgment, depending on the particular facts, if he would be deprived of the due process of law guaranteed by the Fifth and Fourteenth Amendments.

We cannot accept plaintiffs' proposition that *Hansberry* allows any third person an unqualified right to collaterally relitigate the merits of a judgment in a prior suit. Under such circumstances, courts could never enter a judgment in a lawsuit with the assurance that the judgment was a final and conclusive determination of the underlying dispute.

If the instant cases presented a situation wherein the plaintiffs had no alternative but to institute an independent lawsuit in order to challenge the *Bolden* consent decree, then their reliance on *Hansberry* might be appropriate. The instant cases do not present such a situation, because this Court continues to maintain jurisdiction over the *Bolden* consent decree. This factor of continuing jurisdiction is quite significant in view of plaintiffs' allegation that the *Bolden* consent decree was procured by a fraud on the court.[6]

Further, we find persuasive the defendants' argument that maintenance of the present suits would mean that they may be faced with either inconsistent or contradictory proceedings. It is significant that the

---

**6.** Plaintiffs' theory of fraud is to say the least rather novel. The usual case involving a collateral attack upon a judgment is one brought by an unsuccessful party who alleges that because of some fraud or deception practiced on him by his opponent, there has never been a real contest in the trial or hearing of the case. Plaintiffs' amended complaint, in essence, alleges that the counsel for one of the *Bolden* defendants inadequately and/or fraudulently repre-

sented his client. Though this Court continues to retain jurisdiction over the *Bolden* suit, none of the *Bolden* parties themselves have, in the past or the present, raised this issue of inadequate legal representation. Because of our disposition of this matter, it is unnecessary for this Court to reach the merits of plaintiffs' alleged claim of fraud in the procurement of the *Bolden* consent decree.

parties to the consent decree in *Bolden* do not seek to avoid that decree nor do they question the procedures by which it was procured. Though the Oburn and Lutz suits are now before the same court which has jurisdiction over the *Bolden* suit, it seems inappropriate to subject the state defendants to two lawsuits unless it is absolutely necessary. Here, this Court finds it not to be necessary.

Finally, in this opinion, this Court takes no position on whether plaintiff, the Conference of State Police Lodges, sufficiently participated in the *Bolden* litigation to be collaterally estopped from attacking the consent decree, or whether any of the plaintiffs should hereafter be allowed to intervene in *Bolden*. The Court merely holds that the instant suits are an improper collateral attack upon the *Bolden* consent decree. Other courts in practically identical circumstances to the instant suits have held collateral attacks to be inappropriate and dismissed the actions as we do here. *Black and White Children of Pontiac School System v. School District of Pontiac,* 464 F.2d 1030 (6th Cir. 1972); *Construction Industry Combined Committee v. International Union of Operating Engineers,* 67 F.R.D. 664 (E.D.Mo.1975).

Though this Court would have subject matter jurisdiction over reverse discrimination cases in general, we do not have jurisdiction over these specific cases, because they are improper collateral attacks upon a consent decree over which this Court continues to exercise jurisdiction. Accordingly, the instant actions are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The one remaining issue before this Court is plaintiffs' request for the convening of a three-judge court. As we have previously stated, the instant suits are an attack upon a consent decree, not an attack upon a state statute which would require the convening of a three-judge court. Even if the instant suits were appropriately ones requiring the convening of a three-judge court, a single district judge must rule upon standing and other jurisdictional questions. We have heretofore found this Court lacks subject matter jurisdiction; accordingly, we deny plaintiffs' request for the convening of a three-judge court. *Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).